# EXHIBIT H

# CONTRACTOR AND EMPLOYMENT AGREEMENT

This Contractor and Employment Agreement (the "Agreement") is made between WYO Tech Investment Group, LLC ("WYO"), a Wyoming limited liability company organized under the laws of the State of Wyoming with offices at 16100 N 71st Street, Scottsdale, Arizona 85260, and Dennis M. Danzik or his Assignee or professional LLC, ("the Executive"), an individual, or as a part of an entity, for mutual consideration, the receipt and adequacy of which is hereby acknowledged by the parties, who agree to the following:

1. **Term, nature and review.**

    A. The Executive is engaged to serve as a Managing Engineer and or Project Engineer (MEng) of WYO for a term of four (4) years, commencing on March 22, 2017 and expiring on March 31, 2021.

    B. The Executive shall exclusively design, and construct 100% of WYO engine laboratories in the United States and Canada as assigned.

    C. The Executive shall be responsible for projects that include engine design, manufacture, assembly processes, electrical interconnects, lubrication, thermal transfer, balance and vibration testing.

    D. The Executive shall conduct all non-disclosure dissemination to potential, and actual customers, investors, jurisdictional authorities, or WYO employees assigned for training.

    E. The Executive may use a limited liability company for information disclosure to limit the Executive liability for information assembled by WYO or other third parties.

    F. The initial term of this Agreement is four years (the "Term"). Effective as of the expiration of such initial Term and as of each annual anniversary date thereof, the Term shall be extended for an additional one-year period unless, (i) not later than one year prior to such an automatic extension date, shall have given written notice to the Executive that the Term shall not be so extended **or** (ii) not later than sixty (60) days prior to such an automatic extension date, the Executive shall have given written notice to WYO that the Term shall not be so extended.

    G. In the event that WYO elects not to extend the Term, it shall pay to the Executive the severance pay provided for in Section 5.D. In the event the Executive elects not to extend the Term, WYO shall not pay to the Executive the severance pay provided for in Section 5.D.

    H. This Agreement may not be terminated by expiration, but only by notice of one party to the other of non-renewal, or as provided for in Section 5.

1



I. During the Term, while the Executive is engaged as the Managing Engineer of WYO, the Executive will perform the duties of the Managing Engineer of WYO as specified by the CEO, Director of Engineering, and other governing documents and under the direction and guidance of Officers, Board of Directors, and Executive Committee.

J. The Executive may invoice and collect payments due as a contractor personally or through his entity, or third-party entity, so long as the entity paid by WYO is not a direct or indirect competitor of WYO.

K. The Executive shall have full authority for the engagement and discharge of all other employees of WYO assigned to the Executive at work sites, and laboratories. The Executive shall have the right to enter into contracts on behalf of WYO with the express written consent of the CEO, subject to the policies of the board, bylaws of WYO.

L. WYO has approved the construction of a facility to be located adjacent the Billings Highway on Park County Wyoming. The Executive will be employed and office at the facility of WYO as soon as the new Park County facility has been constructed and has been approved for occupancy, which is expected no later than March 31, 2018.

M. The Executive shall have the sole option to convert from a contractor to an employee on or after October 1, 2017. If the WYO Park County facility is delayed then WYO shall provide for an office at WYO's Nevada facility located in North Las Vegas, Nevada.

N. The Executive will maintain his operators' licenses and registrations for field work in the oil and gas industry including:

1. First class first aid certification.
2. Transportation of hazardous goods.
3. Hydrogen Sulfide emergency response and remediation.
4. Level I (site specific) waste water treatment approval.
5. Field boiler and low pressure steam.
6. Level I biological laboratory certification.

2. **Compensation.**

A. Throughout the Term of this Agreement, the base annual contract minimum or salary of the Executive shall not be less than $ 460,000.00 payable according to WYO regular payment schedule but no less often than monthly.

B. The Executive will invoice WYO monthly, or quarterly at the Executive's sole option. The Executive may defer or postpone compensation at his sole option, but deferrals or postponements of earnings cannot exceed 12 continuous months.

C. The Executive is entitled to a royalty (stipend) of up to $ 8,500.00 per month to be deducted from annual contract or salary minimums if the Executive chooses to pay certain fieldwork

2



expenses or other costs as out of pocket expenses. These payments may be assigned if the Executive chooses, but will be included in an annual 1099 filing for the Executive.

D. The Executive is entitled to charge or collect a deposit from WYO for the following expenses;

1. Travel expenses.
2. Auto or Truck rental and associated fuel expenses.
3. Airfare.
4. Hotel expenses.
5. Fieldwork trailer expenses.
6. Laboratory equipment.
7. Tools.
8. Safety and personal protection equipment.
9. SCBA.
10. Training associated with maintaining field certifications.
11. Emergency and standard medical expenses.

The Executive shall file a monthly reconciliation with WYO. If the difference owed to WYO is less than $2,500.00 then the Executive may carry the balance forward to the next month's expenses. If WYO owes the Executive expenses, then WYO shall pay the Executive within ten (10) days of the Executive's submission of the monthly reconciliation.

E. Providing that the Executive maintains the preset project Timeline ("Timeline") for the individual projects under the Executive control, the Executive shall be entitled to a Project Completion Bonus ("PCB") of $2,300.00 per fieldwork day spent on an individual project. The PCB shall be reviewed quarterly and paid on March 31st, and August 31st of each year under the terms and conditions of this Agreement. The Executive shall be guaranteed a minimum of six (6) fieldwork days per month. Travel shall be included as an active fieldwork day.

F. The Executive shall have the exclusive right to choose the individual project and workload so long as the Executive maintains an 85% Timeline completion rate, and no more than 20% of the Executive projects are behind the Timeline schedule set at the outset of the project.

G. The Executive's performance, compensation and benefits shall be reviewed at least annually by WYO's Executive Committee on behalf of WYO's Board of Directors; however, in no event shall the Executive's base annual salary for any subsequent year of this Agreement be reduced below the level of the previous year. WYO's Executive Committee may, in its sole discretion, increase Executive's base annual salary, but must proportionally increase the Executive's base annual salary to the extent that WYO implements a salary increase generally and ratably applicable to substantially all executives of WYO.

3



3. **Benefits.**

   A. Except as may otherwise be indicated in this Agreement, the Executive shall be entitled to participate in any employee benefit plan, including but not limited to, medical coverage, life insurance and contributions to Executive's retirement plan, that WYO has adopted or may adopt, maintain or contribute to for the benefit of its executives at a level commensurate with Executive's position and compensation, subject to satisfying the applicable eligibility requirements therefore and in accordance with the terms of those plans. Notwithstanding the foregoing, WYO may modify or terminate any employee benefit plan at any time in accordance with its terms.

   B. The Executive shall also be entitled to the use of a leased or rental automobile, in amounts that are at least equal to that which was provided to the Executive by WYO as of the effective date of this Agreement. In addition, the Executive shall be entitled to twenty (20) days paid vacation per calendar year. The Executive may carry forward any unused and accrued vacation days into the following calendar year in accordance to the policy in the WYO Employee Handbook to be published no later than February 28th, 2018. Vacation days cannot be combined with active fieldwork days for PCB credit.

4. **Business Expenses.**

   A. WYO will pay or reimburse the Executive for reasonable expenses incurred by the Executive, as specified in 2(D). herein, which are directly related to the performance of the Executive's duties of employment, or for labor or assistance that substantially saves the Executive time or alleviates the Executive from non-productive tasks, subject to maintenance of the documentation by the Executive in accordance with established WYO policy.

5. **Cancellation.**

   A. ***Cancellation Due to Death or For Cause.*** This Agreement will be canceled (i) automatically upon the Executive's death; or (ii) immediately by the WYO For Cause. "For Cause" shall mean: (a) Executive's material breach of a material clause of this Agreement; (b) Executive's failure or refusal to perform his duties; (c) Executive's misconduct or Executive's involvement with a third party, or vendor that is materially damaging or detrimental to WYO; (d) Executive's conviction of any felony (e) Executive's willful refusal to obey the lawful, legitimate written orders or directions of the Board, as expressed in Board policies, memoranda or resolutions; (f) Executive's violation of WYO's bylaws; or (g) Executive's acts of dishonesty, fraud, or gross negligence in connection with the performance of the Executive's duties under this Agreement.

   B. In the event this Agreement is canceled under the provisions of this Section 5.A., the Executive shall receive no further compensation beyond the date of cancellation other than



compensation or benefits accrued or required by law. WYO and the Executive's family or designated representative will mutually agree upon any communications with WYO members and/or to the public regarding the cancellation of this Agreement for reasons of death (5.A.i.). WYO shall have sole authority for any communications with WYO members and/or to the public regarding cancellation of this Agreement pursuant to Section 5.A.(ii).

C. ***Cancellation by WYO.*** WYO may cancel this Agreement for any reason by vote of the Board of Directors at a regular or special meeting called for that purpose. The Executive (i) shall be given the same written notification of that meeting as is given to the Board of Directors, (ii) shall be informed in writing why the cancellation is being considered, (iii) shall have the right to address the Board of Directors regarding the proposed cancellation, and to be represented by counsel or other representative of his choosing and (iv) shall accept the decision of the Board of Directors as the sole and absolute decision of WYO. In the event this Agreement is cancelled under the provisions of this subsection (5.B.), the Executive shall receive the compensation applicable under this Agreement and all benefits as set out below in subsection 5.D.

D. ***Cancellation By Non-Renewal of Term.*** Either party may terminate this Agreement by giving the other party written notice that the Term shall not be extended as per Section 1 herein.

E. ***Severance Pay and Benefits.*** If WYO cancels this Agreement pursuant to Section 5.B or Section 5.C and the Executive suffers a Separation From Service (as defined by Section 409A of the IRS Code), the Executive shall receive Severance Pay in the amount of:
(i). WYO shall pay Executive two (2) years of Executive's base annual salary at the rate applicable on the date of cancellation, plus a full year credit for PCB based on a twelve month average; (ii). WYO shall continue to provide the Executive's health and life insurance for twelve (12) months; provided, that the Executive has enrolled in and remains eligible for group health plan continuation coverage under Section 4980B (COBRA) of the Internal Revenue Code of 1986, as amended (the "Code"), and the period of coverage provided by WYO under this Section is the group health plan continuation coverage that the Executive would be entitled to under the relevant group health plan, ERISA Section 601 *et seq.* and Section 4980B of the Code. The Executive will be required to pay the same portion of the premium for such COBRA coverage as if the Executive remained an employee, with appropriate reporting of any imputed income and related tax withholding, if any; and (iii). WYO shall also pay, to the extent permitted by law, to the Executive the equal amount WYO would have been required to expend in order to provide Executive one (1) year of all other benefits that the Executive would have received if he had remained employed by WYO during that one (1) year and in accordance with current practices and/or policies of WYO, including but not limited to: short-term disability insurance coverage, long-term disability insurance coverage, pension contribution, 401(k) contribution, and automobile expenses. (iv). In order to receive this Severance Pay outlined in this Section 5.D.i-5.D.iii, Executive must execute and deliver to WYO a valid Waiver and Release Agreement in a form tendered by WYO that shall be negotiated in good faith by both parties, which shall include Executive's general release of all claims against WYO.

5



(v). Any Severance Pay under this Section 5 shall be paid to Executive in a lump sum, less tax withholdings, on the latest date of (x) no more than 30 days after the Executive's last date of employment with WYO or (y) no more than 7 days after the Waiver and Release Agreement becomes final. (vi). At any time during the 12 months that WYO has agreed to pay the executive's COBRA health and life insurance premiums as per Section 5.D.ii, WYO's obligation to pay these premiums automatically ceases on the date that the Executive becomes eligible to receive other health care or life insurance benefits that are substantially similar to the health care insurance benefits that the Executive receives from the aforementioned COBRA benefits. If the Executive becomes eligible to receive such benefits as described above, the Executive agrees to notify WYO in writing within five (5) days of receiving notice of his eligibility to receive the benefits as described above.

F. ***Public Notice.*** WYO and the Executive shall mutually agree upon any communications with WYO members and/or to the public regarding the cancellation of this Agreement by either party under subsection 5.A(i), 5.B or 5.C herein. Neither party shall defame, disparage or denigrate the other in public statements.

6. **Intellectual Property, Confidentiality and Investment.**

   A. The Executive recognizes and agrees that all copyrights, trademarks, or other intellectual property rights to created works arising in any way from the Executive's employment by WYO are the sole property of WYO and agrees not to assert any such rights against WYO or any third parties and hereby assigns any and all such rights to WYO. Upon cancellation or termination of this Agreement by either party for any reason, the Executive will relinquish to WYO all documents, books, manuals, lists, records, publications, accounts, computer files or other writings, keys, credit cards, equipment (including but not limited to a leased automobile), or other articles that came into the Executive's possession in connection with the Executive's employment by WYO and to maintain no copies or duplicates without the written approval of the Board of Directors.

   B. The Executive will maintain in confidence during and subsequent to the Executive's employment any information about WYO or its Members which is confidential information or which might reasonably be expected by the Executive to be regarded by WYO members as confidential. The Executive will not make or direct any personal investments based upon information conveyed to the Executive as the President and CEO of WYO where the information is conveyed with a request of confidentiality.

   C. This section of this Agreement shall survive the termination of this Agreement of a period of thirty-six (36) months from the date of the termination of this Agreement.

7. **Non-Competition and Non-Solicitation.**

   A. ***Non-Compete.*** Upon termination or cancellation of this Agreement or termination of Executive's employment with WYO for any reason, the Executive will refrain for one year from directly or indirectly undertaking employment or any compensated duties as a consultant, independent contractor, owner, agent, employee, employer, officer, partner,



director or otherwise, alone in association with any other person, corporation or other entity on behalf of any person, entity or association in substantial competition with WYO unless WYO approves the employment or duties in writing or unless the employment or duties are not directly or indirectly related to any activity for which Executive had executive responsibility for the Association or about which Executive had confidential information. Persons, entities and/or Associations that are considered in substantial competition with WYO include all persons, entities and associations in the "" and/or "" fields that provide services that are both similar to the services provided by WYO and those services are provided by WYO to its members or customers who are in the WYO serviced fields.

B. It is understood and agreed that WYO and the Executive's employment is national in scope and that this restriction applies throughout the United States.

C. *Non-Solicitation.* The Executive agrees that during any period in which Executive is employed by WYO, and for one (1) year after Executive's termination of employment, for any reason, Executive will not, either on his own behalf or on behalf of any other person or entity, as an employee, partner, consultant, independent contractor, owner, agent, or in any other capacity, directly or indirectly: (i). Solicit business from any client or member of WYO, or any of their affiliates with which Executive had contact, or responsibility for, or about which Executive had knowledge of Confidential Information by reason of Executive's employment with WYO; (ii). Solicit business from any client or member which was pursued by WYO or any of their affiliates and with which Executive had contact, or responsibility for, or about which Executive had knowledge of Confidential Information by reason of Executive's employment with WYO, within the twelve (12) month period prior to termination of employment; or (iii). Solicit, retain, employ, recruit or attempt to recruit any person who on or during the ninety (90) days immediately preceding the date of such solicitation or hire is or was an officer, executive or employee of WYO or any of their affiliates, or whom Executive was involved in recruiting while Executive was employed by WYO. (iv). The "solicit business" restriction in subsections 7.B.i and 7.B.ii is limited to soliciting the type of business or services provided by WYO to any client or member within the thirty-six (36) month period prior to Executive's termination of employment.

8. **Construction of Restrictive Covenants.**

   A. The parties agree that the covenants contained in this Agreement are severable. If an arbitrator or court shall hold that the duration, scope, area or activity restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope, area or activity restrictions reasonable and enforceable under such circumstances shall be substituted for the stated duration, scope, area or activity restrictions to the maximum extent permitted by law.

9. **Indemnification.**

   A. WYO shall indemnify, hold harmless, and defend the Executive against any and all claims arising out of, or in connection with the Executive's performance of his duties for, and on

7



behalf of. WYO to the full extent permitted by law but not in respect to claims in which it is adjudicated in a decision on the merits that the Executive engaged in fraudulent, grossly negligent, or criminal acts. Such right shall include the right to be paid by WYO expenses, including attorney's fees, incurred in defending any such claim in advance of its final disposition; provided, however, that the payment of such expenses in advance of the final disposition of such claim shall be made only upon delivery to WYO of an undertaking, by or on behalf of the Executive, in which the Executive agrees to repay all amounts so advanced if it should be ultimately determined that the claim is not one to which Executive is entitled to indemnification. This duty to indemnify shall survive the termination, expiration or cancellation of this Agreement.

10. **Successors.**

   A. This Agreement shall be binding upon WYO and the Executive, their respective heirs, executors, administrators, successors and assigns.

   B. The Executive will not assign or delegate any part of the Executive's rights or responsibilities under this Agreement to a third party unless the Board of Directors of WYO agrees in writing to the assignment or delegation. WYO shall require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of WYO expressly to assume and agree to perform this Agreement in the same manner and to the same extent that WYO would have been required to perform it if no such succession had taken place.

11. **Entire Agreement.**

   A. This document contains the entire Agreement of WYO and the Executive. It may not be changed orally but only by an agreement in writing signed by WYO and the Executive. This Agreement supersedes and cancels all previous agreements between WYO and the Executive. If any term of this Agreement is declared invalid by a court of competent jurisdiction the other terms of this Agreement shall remain in effect.

12. **Governing Law, Jurisdiction and Venue**.

   A. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Arizona, without reference to principles of conflict of laws. Jurisdiction and venue is exclusively limited in any proceeding by WYO or the Executive to enforce their rights hereunder to the United States District Court for the state of Arizona or any court geographically located in the state of Arizona. The Executive hereby waives any objections to the jurisdiction and venue of said courts, including any objection to personal jurisdiction, venue, and/or forum non-conveniens, in any proceeding by WYO to enforce its rights hereunder filed in said courts. The Executive agrees not to object to any petition filed by WYO to remove, transfer, re-file and/or dismiss an action filed by the Executive in a forum or court other than the United States District Court for the state of Arizona or any court geographically located in the state of Arizona. Should the Executive object to such a



petition, the Executive agrees to be responsible for WYO's legal fees and expenses associated with such a petition.

13. **Survival of clauses.**

    A. Those terms and provisions which, by their nature, survive the termination, cancellation or expiration of this Agreement (which terms include specifically Sections 5E, 6, 7, 8 and 9) shall survive the termination, cancellation or expiration of this Agreement.

14. **Headings**.

    A. The headings of this Agreement are not part of the provisions hereof and shall have no force or effect.

15. **Notices.**

    A. All notices and communications pursuant to this Agreement shall be effective when actually received by the addressee. All notices and other communications under this Agreement shall be in writing and shall be given by hand delivery to the other party or by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address as either party furnishes to the other in writing in accordance with this Section:

    If to the Executive:

    Dennis M. Danzik
    1108 14th Street
    Cody, WY 82414

    If to WYO:

    WYO Tech Investment Group, LLC
    16100 N 71st Street
    Scottsdale, Arizona 85260

16. **Severability.**

    A. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement. If any provision of this Agreement shall be held invalid or unenforceable in part, the remaining portion of such provision, together with all other provisions of this Agreement, shall remain valid and enforceable and continue in full force and effect to the fullest extent consistent with law.

9



17. **Tax Withholding**.

   A. Notwithstanding any other provision of this Agreement, WYO may withhold from amounts payable under this Agreement all federal, state and local taxes that are required to be withheld by applicable laws or regulations.

18. **No Implied Waiver.**

The Executive's or WYO's failure to insist upon strict compliance with any provisions of, or to assert, any right under, this Agreement shall not be deemed to be a waiver of such provision or right or of any other provision of or right under this Agreement.

19. **Notification of Subsequent Employment**.

Executive shall report promptly to WYO any employment with another employer (including service as a partner of any partnership or service as an independent contractor or establishment of any business as a sole proprietor) obtained during the period in which Executive's post termination obligations set forth in this Agreement apply.

20. **Counterparts**.

This Agreement may be executed in several counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument.

**IN WITNESS WHEREOF**, the Executive has executed this Agreement and, pursuant to the authorization of its Board, WYO has caused this Agreement to be executed in its name on its behalf, all as of the day and year first above written.

**For WYO:**

_____
William Hinz
Managing Member / Chief Executive Officer


**For the Executive:**

_____
Dennis M. Danzik
Managing Engineer