FILED

1:54 pm, 2/6/19

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DENNIS MEYER DANZIK | ) | Case No. 17-20934 |
| | ) | Chapter 11 |
| Debtor | ) | |

**DECISION MEMORANDUM ON CWT'S MOTION TO DISMISS**

      This matter is before the court on CWT Canada II Limited Partnership's and Resource Recovery Corporation's (CWT) Motion to Dismiss after an evidentiary hearing held November 20, 2018. Debtor Dennis Meyer Danzik (Danzik or Debtor) responded and CWT Parties filed a reply. The court took the matter under advisement. Upon review of the testimony, documentary evidence and parties' arguments, the court enters its findings of fact and conclusions of law and grants the Motion.

**Jurisdiction**

      This court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.[1]

**Background**

      CWT moves the court dismiss on five grounds, which include: 1) gross mismanagement of the estate; 2) failure to timely file monthly operating reports; 3) in ability to file a confirmable plan; 4) Debtor's income is insufficient to effectuate a viable plan of reorganization; and 5) Debtor filed his bankruptcy case in bad faith.

      Sigma Opportunity Fund II, LLC filed a similar Motion to Dismiss in Debtor's previous bankruptcy.[2] Therein, Sigma argued for dismissal because Mr. Danzik could not effectuate a viable Chapter 11 Plan. It also asserted there was diminution of estate assets with no reasonable chance to rehabilitate and that Mr. Danzik was acting in bad faith. At that time, as in this case, both Sigma and CWT brought adversary proceedings against Mr. Danzik to have its debts deemed non-dischargeable. Neither adversary in the previous case reached final resolution. The court dismissed the case on March 8, 2017, and the case closed on July 5, 2018.

---

[1] Unless otherwise noted, all citations are to the United States Code, title 11.
[2] *In re Danzik*, Case No. 16-20002, filed January 4, 2016 (Bankr. D. Wyo.).

Debtor, as CEO for RDX Technologies filed two bankruptcy cases in Arizona, which were dismissed.[3] He is no stranger to the bankruptcy process.

Mr. Danzik filed his current voluntary chapter 11 bankruptcy petition on December 6, 2017, five months after the previous bankruptcy closed. Again, both CWT and Sigma filed adversary proceedings to determine non-dischargeability.

**Discussion**

The Bankruptcy Code requires a court to convert or dismiss a case for cause unless a debtor demonstrates unusual circumstances showing it is not in the creditors' best interest to dismiss or convert and there is a reasonable likelihood that a plan will be confirmed.[4]

"Cause" includes—

> . . .
>
> (B) gross mismanagement of the estate;
>
> . . .
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> . . .
>
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.[5]

"The factors listed in § 1112(b)(4) are illustrative of common circumstances that arise in the context of chapter 11 cases that can indicate the presence of cause for dismissal. However, the list is non-exclusive."[6] As stated, CWT alleges Debtor cannot effectuate a confirmable plan and filed this bankruptcy case in bad faith.

Movants bear the initial burden to establish cause to dismiss a Chapter 11 bankruptcy.[7] If CWT establishes cause, the burden shifts to Debtor to prove the case falls within the "unusual circumstances" exception to mandatory conversion or dismissal.[8] The Tenth Circuit concluded that a bankruptcy court has broad discretion to convert or dismiss a case.[9]

---

[3] *RDX Technologies Corporation*, Case No. 2:15-bk-15859-PS, filed December 17, 2015 and closed June 8, 2016; *In Re RDX Technologies Corporation*, Case No 2:17-bk-14387-PS, filed December 5, 2017 and dismissed November 28, 2018 (dismissed by stipulation amongst the parties, reached in open court).
[4] § 1112.
[5] § 1112(b)(4).
[6] *In re Platte River Bottom, LLC*, No. 13-13098 HRT, 2016 WL 241464, at *3 (Bankr. D. Colo. Jan. 19, 2016).
[7] *In re Hyatt*, 479 B.R. 880, 886 (Bankr. D.N.M. 2012).
[8] 11 U.S.C.A. § 1112(b)(2); *In re McTiernan*, 519 B.R. 860, 864 (Bankr. D. Wyo. 2014).
[9] *In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004).

1. <u>Gross mismanagement of the estate.</u>

CWT argues Debtor grossly mismanages the bankruptcy estate.[10] The alleged gross mismanagement must occur post-petition.[11] Examples of gross-mismanagement found by several courts include: failure to pay outstanding real property tax and employment tax obligations;[12] debtors paying for personal benefitting expenses like life insurance rather than other expenses;[13] failure to submit monthly operating reports depicting a debtor's income and expenses;[14] and, a debtor's failure to seek court approval before taking certain actions outside the ordinary course of business, such as paying prepetition debts or incurring debt.[15] CWT primarily relies on Debtor's failure to timely file monthly operating reports as its basis for the gross mismanagement claim, which will be addressed separately below.

2. <u>Failure to timely file monthly operating reports.</u>

As the second basis to dismiss, CWT alleges Debtor failed to timely file monthly operating reports pursuant to Section 1112(b)(4)(F). This basis for dismissal, goes hand-in-hand with gross mismanagement of the estate. The debtor-in-possession must perform the duties of a trustee specified in Section 704(a)(8), which mandates he file periodic operating reports and summaries and such other information as the U.S. Trustee or court requires.[16]

Below are the dates Debtor filed his monthly operating reports (MORs). Again, Debtor filed for bankruptcy protection December 6, 2017. Debtors must file the MORs by the twenty-first day of the month following the reporting period.[17]

---

[10] § 1112(b)(4)(B).
[11] *In re McTiernan,* 519 B.R. 860, 866 (Bankr. D. Wyo. 2014) (citing *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo. 2013)).
[12] *In re McTiernan*, 519 B.R. at 866 (citing *In re Builders Group & Dev. Corp.*, Case No. 13-04867, 2014 WL 1873412, *9 (Bankr. D.P.R. May 9, 2014)).
[13] *Id.* (citing *In re Patel,* Case No. 5:11-bk-73416, 2012 WL 3764523 (Bankr. W.D. Ark., Aug. 22, 2012)).
[14] *Id.* (citing *In re Halal 4 U LLC*, Case No. 08-15216, 2010 WL 3810860 (Bankr. S.D. N.Y., Sept. 24, 2010)).
[15] *In re Creech*, 538 B.R. 245, 250 (Bankr. E.D.N.C 2015).
[16] *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing §§ 704(a)(8), 1106(a)(1)). See also Fed. R. Bankr. P. 2015(a).
[17] U.S. Department of Justice, Office of the United States Trustee, Districts of Colorado and Wyoming, Operating Guidelines and Reporting Requirements of the United States Trustee For Chapter 11 Debtors In Possession and Chapter 11 Trustees, *available at* http://www.justice.gov/ust/r19/denver/chapter11.htm.

| Month | Date filed |
|---|---|
| December 2017 | May 31, 2018 |
| January 2018 | " |
| February 2018 | " |
| March 2018 | " |
| April 2018 | " |
| May 2018 | August 6, 2018 |
| June 2018 | " |
| July 2018 | October 4, 2018 |
| August 2018 | October 9, 2018 |
| September 2018 | November 6, 2018 |
| October 2018 | November 20, 2018 |
| November 2018 | December 26, 2018 |

Prior to the hearing, Debtor did not timely file any MORs. He filed October's on the morning of the hearing, being the only timely filed MOR. The court's review of the docket reflects that post-hearing, Debtor has fallen back into the pattern of untimely filed MORs. Debtor admits he filed the MORs untimely but responds that "none have been the subject matter of a motion to compel or any other inquiry to the court seeking their production. The Debtor is a busy engineer and has not filed each report on the due date."[18] Debtor also responds:

> No prejudice is or can be alleged as a result of late filed MOR's. In most cases the filing occurred prior to the time any motion (and there were none) could have been filed and set on filing the report. The movants' reference to flagrant disregard is totally unfounded. There are no allegations that items reported represent horses that got out of the barn and can now not be retrieved.[19]

Courts routinely stress the importance of the monthly operating reports in Chapter 11 cases. "The importance of these monthly report[s] cannot be over-emphasized. Without the required reports the creditors are unable to determine if the debtor is exercising its powers in a manner beneficial to them and non-compliance is prejudicial to their interests."[20] As this court explained to Debtor in its previous Dismissal Order, "Filing late monthly reports does not satisfactorily explain or excuse failure to satisfy [a debtor's] duties as a chapter 11 debtor. Filing

---

[18] *Debtor's Response to Motion to Dismiss of the CWT Parties*, Case No. 17-20934, ECF No. 184, page 3, ¶ 3.
[19] *Id*.
[20] *In re Meyers,* Case No. KS-04-054, 01-41991-11, 2005 WL 1324019 *2 (B.A.P. 10th Cir. May 25, 2005) (unpublished).

catch-up reports is akin to locking the barn doors after the horses have already gotten out."[21] Despite the court's admonishment, Debtor did not change his behavior.

What is more troubling is this court dismissed Debtor's previous case, in part, because he failed to timely file MORs. The court explained the importance of timely operating reports:

> [A] debtor's compliance with the Code's requirements and serve as a test for the debtor's ability to reorganize. Noncompliance in filing the reports is not a mere technicality. "Habitual non-compliance calls in to question a debtor's ability to effectively reorganize."  This court previously found that late filed monthly operating reports stands as cause: "A debtor in bankruptcy must comply with the reporting requirements so that creditors and the court may determine whether the bankruptcy case is being properly administered while a debtor enjoys the benefits of the bankruptcy process."[22]

Debtor's continued behavior of late filed reports shows habitual non-compliance and flagrant disregard of the Bankruptcy Code and Rules. The court did not excuse Debtor from satisfying the timely filing or reporting requirement. CWT has met its burden that Debtor grossly mismanaged the estate by failing to timely file monthly operating reports. This weighs in favor of dismissal or conversion.

      3.    <u>Unable to timely file a confirmable plan.</u>

CWT asserts Debtor is unable to file a confirmable plan pursuant to Section 1112(b)(4)(J), which specifically states: "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court."[23] With the exception of small business cases, the Code provides no deadline, nor do the rules, to file a chapter 11 plan.[24] The 120–day period that is referred to as a "deadline" for filing a plan is really not a deadline but an exclusivity period allowing only the debtor-in-possession the right to file a plan within 120 days or as the court otherwise extends.[25] The Code establishes deadlines for a small business debtor to file a plan of reorganization within 300 days of the petition date,[26] and to obtain plan confirmation within 45 days after the filing date.[27]

---

[21] *In re Danzik*, Case No. 16-20002, D.E. 393, *Order on Sigma Opportunity Fund II, LLC's Motion to Dismiss,* p. 10 (Bankr. D. Wyo.) (citing *In re Whetten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012)).
[22] *Id.* (citing *In re McTiernan*, 519 B.R. at 867)
[23] *In re Hyatt*, 479 B.R. 880, 890 (Bankr. D.N.M. 2012).
[24] *Id*.
[25] *Id*.
[26] § 1121(e)(2).
[27] § 1129(e).

A small business debtor is one that engages in business and has no more than $2,490,925 in noncontingent, liquidated, secured, and unsecured debt, excluding insider debt.[28] Debtor's debt grossly exceeds this amount. He is not a small business debtor subject to those statutory filing deadlines.[29] Therefore, it follows that Debtor did not violate any Code deadlines for filing or confirming a plan. CWT did not meet its burden proving this factor is cause to dismiss or convert Debtor's bankruptcy case.

    4.    <u>Inability to effectuate a confirmed plan</u>

CWT asserts the court should dismiss Debtor's bankruptcy case due to his inability to effectuate a confirmed plan, which means he lacks the ability to formulate a plan or carry one out.[30] The dismissal hearing took place ten months after Debtor filed his voluntary Chapter 11 bankruptcy case. Debtor asserts he is "on pace to exceed $500,000.00 in personal earnings for 2018, and paying bi-monthly withholdings to assure no 2018 personal income tax liability arises. . . ." Debtor also "opted, for now to forego the confirmation process until there is some resolution with his biggest alleged claimant, the movant [CWT]."

Dismissal for inability to effectuate a Chapter 11 plan is appropriate where a debtor's failure to file acceptable plan after reasonable time indicates its inability to do so, whether the inability is due to its poor financial condition, structure of claims against it, or some other reason.[31] Court grant dismissals or conversions under Section 1112(b)(2),[32] where the debtor is an individual and the estate creditors continue to suffer losses as a result of the delay.[33] In *Koerner*, the Fifth Circuit held that conversion under Section 1112(b)(2), was appropriate where the individual debtor had submitted only a "nebulous plan" over a sixteen-month period.[34] Similarly, the bankruptcy court dismissed a Chapter 11 petition under Section 1112(b)(2) because the debtors failed to present an acceptable plan within eight months of the petition.[35]

---

[28] Section 101(51D).
[29] Some confusion may have occurred because Debtor has been using the incorrect form for the Monthly Operating Reports and an outdated version of the small business monthly operating report.
[30] *Hall v Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989).
[31] *Id.*
[32] CWT cites to Section 1112(b)(4)(M). However, both parties address the failure to file a plan under Section 1112(b)(2). Therefore, the court amends the pleading to conform to the testimony presented by both parties pursuant to F. R. Civ. P. 15(b)(2).
[33] *Hall v Vance*, 887 F.2d at 1044. See *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1966); *Fossum v. Federal Land Bank*, 764 F.2d 520, 521-22 (8th Cir. 1985); *In re McDermott*, 77 B.R. 384, 386 (Bankr. N.D.N.Y. 1987).
[34] *In re Koerner*, 800 F.2d at 1368.
[35] *In re Cassavaugh*, 44 B.R. 726, 728 (Bankr. W.D. Mo. 1984).

Currently, Debtor has been in bankruptcy over a year and is no closer to submitting a confirmable plan than he was a year ago.

As stated above, Debtor informed the court, he elects to not file a plan until he resolves the conflict in the New York Court with CWT. Debtor asserts he will commit substantial disposable income to a chapter 11 plan to make confirmation possible over objecting unsecured creditors and that he is "marshalling his disposable income and not unnecessarily spending."

CWT argues that although Debtor's MORs show a few substantial payments, the payments are too sporadic and inconsistent to support payments required for a confirmable plan. CWT argues Debtor needs to make $14,000.00, payments per month to the Internal Revenue Service, and to CWT, payments of $117,234.69, to keep nonexempt property. CWT expands its argument, that if the IRS claim did not have priority, and Debtor had his full profits of $34,555.00, even then it is not possible for Debtor to pay CWT's, Sigma's, or the IRS' claims totaling $13.2 million. Debtor is unable to confirm a plan of reorganization under Chapter 11 without losing all nonexempt property.

    a.   *Claims*

The Claim Registry reflects total claims of $58,146,974.99.[36] The Internal Revenue Service last modified its claim (No. 3.4) on July 27, 2018. The latest claim amounts are: $637,409.81 - secured; $56,325.31 - unsecured priority claims; and $1,642,801.32 – unsecured, totaling $ 2,336,536.44.[37] The IRS' secured debt and priority unsecured debt, totaling $693,735.12 must be paid over a period no longer than five (5) years, commencing on the petition date.[38] This monthly payment amount under the plan increases each month Debtor delays in getting a plan approved.

There are other secured creditors: Richard S. Rofe, of $951,048.72, with a lien on real property located in Cody, Wyoming, and TD Auto Finance LLC, of $30,012.05, with a lien on a 2006 Bentley Arnage. The rest of the claims are general unsecured claims of $56,472,178.11. This amount includes, but is not limited to, claims filed by Sigma Opportunity Fund, LLC, GEM HOLDCO, GEM Ventures, LTD, and the CWT's contested claims.

---

[36] This includes duplicate claims for CWT Canada II Limited Partnership and Resource Recovery Corporation, which will only be paid one amount, if allowed.
[37] This total does not include penalties or interest, nor is the court ruling on the allowance or disallowance of the claim.
[38] Sections 1129(a)(9)(C), (D), and 507(a)(8).

b.  *Income/Expenses*

It is nearly impossible for the court to get a true picture of Debtor's net income. As in his previous case, Mr. Danzik appears to base his income stream on account receivables, not actual cash collected. This creates discrepancies within the MORs where cash deposits are less than reported income. For example, in Debtor's September 2018 MOR, he states his cash profit is $55,054.25, but the cash on hand only increased $35,406.80. Using account receivables misleads creditors as to cash available for debt payment each month. In December, Debtor reports a cash profit of $42,895.33, yet his account balances only increased by $20,228.12.

In July, Debtor classified himself as an employee with a base pay of $600,000.00, with taxes withdrawn each month so his tax debt would not increase.[39] Per the MORs since July, Debtor averaged just over $20,500.00, in expenses leaving income of $29,500.[40] On its face, this appears to be a substantial amount to contribute towards a monthly plan payment. However, per the court's calculations, Debtor needs to pay the IRS approximately $12,000.00 per month during the remainder of the 60-month period to pay the secured and unsecured priority arrears in full.[41] Debtor's current listed expenses do not provide for personal day-to-day living expenses, including housing expenses. According to Debtor's Schedule I, he incurs approximately $18,000.00, per month in living expenses but this figure does not include the taxes currently withdrawn from his pay. The court also notes Debtor does not budget for professional expenses of Counsel, accountant services or US Trustee fees. The MORs provide information that is incomplete and inaccurate. The court is not able to determine whether, even if Debtor chooses to file a plan, it would be confirmable.

Creditors are suffering losses and delay. Creditors are not receiving distributions from the estate while Debtor parks in bankruptcy waiting for the New York litigation to resolve. Debtor knew, per his petition, that he would be asking the New York State Court to reconsider its judgment, yet Debtor waited eight months to file the pleadings. As the numbers above demonstrate, Debtor will only pay unsecured debtors a few pennies on the dollar, so even if

---

[39] Debtor's July Monthly Operating Report.
[40] Debtor's listed expenses include over $17,000.00 for withheld taxes paid, but these payments do not show up in Debtor's attached bank statements, so it is unclear how and whether he is remitting these taxes. Debtor also has expenditures in his Expense Running Sheet that do not correspond to any bank records, so Debtor either has a source of unreported income or is using credit cards and increasing his debt post-petition.
[41] Sections 1129(a)(9)(C), (D), and 507(a)(8).

successful in New York, there would be minimal impact to the plan because only the distribution would be impacted, not Debtor's actual plan funding. Refusal to file a plan is not reasonable.

CWT satisfied its burden that Mr. Danzik is not able to formulate or carry-out a plan. This factor supports that cause exists to dismiss Debtor's bankruptcy case. The court is concerned Debtor not only failed to attempt to file a plan in the 10 months this prior to the hearing, he refuses to do so, contrary to the Bankruptcy Code and Rules. Debtor enjoyed the benefits of bankruptcy for over two years, between his two dockets, without filing a viable plan. Debtor did not present creditors with a plan nor has he presented sufficient evidence that the court could confirm any anticipated plan given the large amount of debt in comparison to his unsupported cash flow.

5. <u>Bankruptcy case filed in bad faith</u>

CWT alleges Debtor misuses the bankruptcy safe haven to delay; his bad faith continues from the first dismissed case; and Debtor is dodging the legal process of the New York Case.

As a rule, Movant bears the burden of proving by a preponderance of the evidence that cause exists for the dismissal or conversion of Debtor's bankruptcy case. However, when a party raises lack of good faith, Debtor bears the burden of proving that he filed in good faith.[42]

A court's power to dismiss for lack of good faith in filing, "while essential to proper administration of Bankruptcy Code policies and implicit in the statute itself, is obviously one to be exercised with great care and caution."[43] A debtor's bad faith in filing a petition can constitute cause for dismissal under Section 1112(b), although it is not an enumerated ground. This court previously analyzed the "good faith" of a voluntary chapter 11 case to require the court to consider the "totality of circumstances" using multiple factors including, but not limited to:

(1) whether the petition serves a valid bankruptcy purpose such as preserving an ongoing concern or maximizing the value of the debtor's estate;

(2) whether the petition is merely to obtain a tactical litigation advantage;

(3) whether debtor's financial problems involve essentially a dispute between the debtor and secured creditors that they can resolve in pending state court litigation;

(4) whether it is a single asset case;

---

[42] *In re Fox*, 232 B.R. 229, 233 (Bankr. D. Kan. 1999).
[43] *In re Fox*, 232 B.R. at 236 (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989)). See also *In re Danzik*, Case No. 16-20002, EFC No. 393 (Bankr. D. Wyo. Mar. 8, 2017).

(5) whether there are one or a very few unsecured creditors;

(6) whether there is no ongoing business or employees;

(7) whether the pre-petition conduct of the debtor was improper; and,

(8) whether the case is filed to evade one or more court orders.[44]

Courts also consider:

(1) the timing of the filing of the petition;

(2) the motive of the debtor in filing the petition; and

(3) the accuracies or inaccuracies in debtor's petition and schedules.[45]

Not all factors apply, and some factors overlap the same facts and arguments. "No single factor is determinative and does not create a per-se test. The weight given to each factor varies with the facts and circumstances of the case."[46]

    a. *Whether the petition serves a valid bankruptcy purpose such as preserving an ongoing concern or maximizing the value of the debtor's estate/Whether there is no ongoing business or employees*

A party filing for Chapter 11 bankruptcy may prove that its petition serves a valid bankruptcy purpose by showing an attempt to preserve an ongoing concern or maximize the estate's value.[47] CWT asserts there is no ongoing business to rehabilitate.

Per Mr. Danzik's petition he is an employee of LEARSI, LLC. He identifies his occupation as engineer/administration. He has no employees. He does not identify any business assets. Debtor is not rehabilitating a business. The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is no potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*.[48] Debtor is using the breathing

---

[44] *In re Ford*, No. 12-20094, 2013 WL 2456379, at *6 (Bankr. D. Wyo. June 6, 2013).
[45] *In re Fox*, 232 B.R. at 235.
[46] *In re Ford*, 2013 WL 2456379 at *6.
[47] *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 619 (3d Cir. 2009).
[48] *In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr. W.D. Ky. 1983).

space to avoid his financial obligations. He has not argued nor demonstrated he is using it to rehabilitate any business.

Debtor can show a bankruptcy purpose by demonstrating he is maximizing asset values in showing there is value that otherwise would be lost outside of bankruptcy.[49] Mr. Danzik has not established such. His argument is that creditors will have access to post-petition income otherwise not available. As Debtor has not presented plan options and the court cannot ascertain an accurate cash-flow source necessary to give creditors access to post-petition income, there is no evidence Debtor is maximizing asset values.

As there is no business to rehabilitate nor asset maximization, there is no valid bankruptcy purpose.[50] This factor weighs in favor of finding Debtor filed his case in bad faith.

    b.    *The timing of filing the petition/Whether the petition is merely to obtain a tactical litigation advantage/Motive of Debtor in filing petition*

Debtor admits that he filed bankruptcy to use the automatic stay to advance his "defensive, legal claims in both New York and Canada." Courts routinely find that stalling litigation is not a valid bankruptcy purpose.[51] Creditor, CWT asserts Mr. Danzik filed this second bankruptcy petition but there are no changed circumstances to justify the second filing; Debtor continues to remain in contempt of court in New York; Debtor has no employees or ongoing concerns to save through reorganization, and the successive filing requires greater scrutiny. CWT alleges Debtor filed this second case on the eve of his wife's deposition in the Arizona judgment-enforcement action to avoid CWT's efforts to use the legal process.

Debtor states that if the New York Court finds against him, he will have no remedy in the bankruptcy court. He also, without court authority, chose to not file a disclosure statement or plan pending resolution of the same action. He justifies untimely MORs in that there was no prejudice to creditors. Although Debtor and CWT have a litigious history, Debtor has other unsecured creditors, *i.e.*, the IRS, Sigma, GEM Parties and other creditors that are now in limbo.

At the risk of repeating itself, this court stated,

---

[49] *In re 15375 Mem'l Corp.*, 589 F.3d at 619.
[50] *In re Copperas Creek, LLC*, No. 11-12-11830 JA, 2012 WL 3061477, at *5 (Bankr. D. N.M. July 26, 2012).
[51] *Anderson v Sno-King Village Ass'n, Inc.,* 745 P.2d 540 (Wyo. 1987) (developers abused the intent and purpose of the United States Bankruptcy Code by filing bankruptcy petition prior to trial dates. . ..); see also *In re Springs Hospitality, Inc.* Case No. 06-13331 HRT, 2006 WL 2458679 at *7 (Bankr. D. Colo. August 22, 2006)*; In re Meltzer*, 516 B.R. 504 (Bankr. N.D. Ill. 2014) (Petitioner filing an involuntary petition does not have a valid bankruptcy purpose . . . when his goal is to stall or disrupt litigation in another court.).

> Bankruptcy is designed to handle distribution problems arising when multiple creditors' pursuits are harmful to creditors as a group and there are not enough assets to go around. Here, there is little concern of distribution because most, if not all, of the assets are secured or subject to a federal tax debt. The largest creditors are all unsecured creditors with minimal to no assets available for distribution from the bankruptcy estate.[52]

Debtor's circumstances have not changed. The CWT litigation continues, and Creditors' claims are on hold while Debtor parks in bankruptcy.

    c.    *Other factors*

Issues previously addressed support a bad faith finding. Despite the court's earlier warning, Debtor did not timely file monthly operating reports and those he filed are unreliable as Debtor's income and expense reports do not correspond to the Debtor's bank statements. Debtor did not start his Debtor-in-Possession Account or Tax Account until February, more than three months after he filed the Petition. Despite Debtor's MORs showing a net income in all those months, he did not deposit any income in those accounts before March.

Most troubling is Debtor's admitted refusal to file plan until the New York litigation is resolved. While the litigation could impact the plan, it would not be difficult for Debtor to propose a plan accounting for these contingencies. Debtor's own delay in seeking relief from the New York State Court judgment unreasonably delayed this bankruptcy case. A debtor is obliged to file a plan "within the time fixed by this title or by order of the court" requires a debtor to file a plan within a "reasonable time," with the reasonableness of debtor's delay to be determined on case-by-case basis.[53] Courts should not allow a debtor to wallow in Chapter 11 indefinitely without filing plan.[54]

During Debtor's cross examination, CWT identified three contracts involving Debtor's employment that he did not include on his petition. The Debtor asserted he is entitled to one-half of any judgment RDX recovers in its Canada lawsuit, but he did not list that lawsuit on his petition. Debtor also admitted he was an employee of Inductance Energy – an entity that appears nowhere in his petition.

---

[52] *Order on Sigma Opportunity Fund II, LLC's Motion to Dismiss*, Case no. 16-20002, ECF No. 393, page 15.
[53] 11 U.S.C.A. § 1112(b)(4)(J); *In re Brooks*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013)
[54] *Id.*; *see also De Jounghe v. Mender,* 334 B.R. 760, 771 (B.A.P. 1st Cir. 2005) (finding that a debtor's failure to file a plan over a 14–month period evidenced no prospect for reorganization and an inability to effectuate a plan); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (holding debtors' failure to file an acceptable plan over eight months indicates debtors would be unable to formulate an acceptable plan).

Again, the court repeats itself, there is no evidence of a feasible reorganization. The court finds many of the same facts: Debtor's failure to file timely MORs; the minimal evidence of Debtor and his families' expenses; and failure to provide a budget to allow the court and creditors to determine Debtor's actual income and expenses. Also, Debtor "opts out" of filing a disclosure statement or plan and at the same time provides MORs that are incomplete, inconsistent, and incorrect.

The court finds based upon the above-described factors, Mr. Danzik does not intend to reorganize in good faith. CWT met its burden establishing cause exists in favor of dismissing Debtor's bankruptcy case.

      6.    <u>Unusual Circumstances</u>

If movant establishes cause, conversion or dismissal is mandatory unless Debtor falls within the "unusual circumstances" exception.[55] The Code does not define "unusual circumstances," but the term contemplates "conditions that are not common in chapter 11 cases."[56] However, Debtor did not address whether unusual circumstances exist establishing that converting or dismiss the case is not in creditors' or the estate's best interests. Debtor does reference the balance in his debtor-in-possession account as grounds for allowing the case to continue. However, as explained, Debtor's income will only allow for a minimal allocation to unsecured creditors. A meager proposed distribution does not support a finding of unusual circumstances.[57]

      7.    <u>Conversion/Dismissal</u>

CWT requests dismissal rather than conversion. Mr. Danzik's exempt assets would only be available to the IRS and secured creditors, leaving no assets for a trustee to administer. There is no pending litigation that would benefit a Chapter 7 estate. The court applies the same analysis from Debtor's first case:

> It is in the best interest of the estate to dismiss.[58] Any liquidation would be for the sole benefit of the secured creditors. "A liquidation bankruptcy case is not

---

[55] 11 U.S.C.A. § 1112(b)(2); *In re McTiernan*, 519 B.R. 860, 868 (Bankr. D. Wyo. 2014).
[56] *In re Whetten*, 473 B.R. 380, 384 (Bankr. D. Colo. 2012) (citing *In re Prods. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008)).
[57] *In re Korn*, 523 B.R. 453, 471 (Bankr. E.D. Pa. 2014).
[58] *In re Whetten*, 473 B.R. at 385.

administered for the benefit of a debtor's secured creditors but for the benefit of its unsecured creditors."[59]

Therefore, it is in the best interest of the estate and creditors that the court dismiss the case.

    8.    <u>Retaining jurisdiction of nondischargeability adversary</u>[60]

CWT also requests the court retain jurisdiction of the pending adversary proceeding, *Plaintiffs CWT Canada II Limited Partnership and Resource Recovery Corporation vs. Dennis Meyer Danzik*, to determine dischargeability of its debt and objection to discharge, pursuant to §§ 1141(d)(2) and 523(a); and, 1141(d)(3) and 727(a). As stated earlier, CWT initiated a nearly identical adversary proceeding in Debtor's initial bankruptcy case. Upon dismissal of the initial bankruptcy case, the adversary proceedings were closed. CWT does not want this repeated.

When an underlying bankruptcy case is dismissed, "a noncore, related proceeding ordinarily should also be dismissed (although leaving the matter to the bankruptcy court's sound discretion)."[61] The Tenth Circuit found support to conclude that bankruptcy courts retain jurisdiction over core proceedings after dismissal of the underlying bankruptcy case.[62] Core proceedings include determining the dischargeability of a debt.[63]

Under Section 349, the bankruptcy court also has power to alter the normal effects of a bankruptcy case dismissal for cause. This section "empowers the Court to issue appropriate orders to protect rights acquired in reliance on the bankruptcy case."[64] Exercise of jurisdiction over an adversary proceeding is a matter left to the sound discretion of the bankruptcy court.[65] In deciding whether to retain jurisdiction over adversary proceeding after dismissing the underlying bankruptcy case, bankruptcy court may consider the following: (1) judicial economy; (2) fairness and convenience to the litigants; (3) the degree of difficulty of the related legal issues involved; and, (4) whether principles of comity dictate that the matter should be left to the state court.[66]

Mr. Danzik submitted himself to the court's jurisdiction upon filing for bankruptcy protection. Although Plaintiff retained local counsel, they have been in the court for both of

---

[59] *Id*; *In re Ohio Indus., Inc.*, 299 B.R. 853, 860 (Bankr. N.D. Ohio 2003); *In re NETtel Corp., Inc.*, 364 B.R. 433, 442 (Bankr. D. D.C. 2006).
[60] Adversary No. 18-02007.
[61] *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009); *Un–Common Carrier Corp. v. Oglesby*, 98 B.R. 751 (S.D. Miss.1989); *In re Stardust Inn, Inc.*, 70 B.R. 888, 890 (Bankr. E.D. Pa. 1987).
[62] *In re Johnson*, 575 F.3d at 1083.
[63] 28 U.S.C. § 157(b)(2)(I).
[64] *Un–Common Carrier Corp.*, 98 B.R. at 753.
[65] *In re In Play Membership Golf, Inc.*, 576 B.R. 15, 29 (Bankr. D. Colo. 2017).
[66] *Id*.

Debtor's bankruptcy filings complaining of the same conduct. It is fair for this court to retain jurisdiction to allow final resolution of the issue. This would save CWT from having to file a third adversary if Debtor were to file another bankruptcy in this court or another jurisdiction. This also figures into judicial economy. This court is aware of history, facts, and parties' prior litigation. It does not have to start over to understand what has been before this court over the past two years. The related legal issues in the adversary are difficult. No other venue can determine dischargeability but the bankruptcy court. The court retains jurisdiction of Adversary Proceeding No. 18-02007.

**Conclusion**

In conclusion, the court finds that movant, CWT Canada II Limited Partnership and Resource Recovery Corporation met its burden proving Debtor 1) is grossly mismanaging the estate by failing to timely file monthly operating reports, 2) is not able to effectuate a confirmable plan; and 3) filed this case in bad faith. Debtor did not address unusual circumstances to prevent dismissal and the court must dismiss.

Additionally, the court retains jurisdiction of pending Adversary Proceeding No. 18-02007.

This decision constitutes the court's findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052. The court will enter a separate judgment based on this ruling as required by Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58(a).[67]

BY THE COURT

_Cathleen D. Parker_   2/6/2019
Honorable Cathleen D. Parker
United States Bankruptcy Judge
District of Wyoming

Service to:
    Matrix

---

[67] *In re Terra Bentley II, LLC*, 2011 WL 808190, at *6 (Bankr. D. Kan. 2011).