Bradley T. Hunsicker (Wyo. Bar 7-4579)
**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

Jeffrey M. Eilender (*pro hac vice*)
Bradley J. Nash (*pro hac vice*)
Joshua D. Wurtzel (*pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
jeilender@schlamstone.com
bnash@schlamstone.com
jwurtzel@schlamstone.com

Attorneys for Creditors CWT Canada II Limited Partnership
and Resource Recovery Corporation

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| In Re: <br><br> DENNIS MEYER DANZIK, <br> xxx-xx-1786 <br><br> Debtor. | Case No. 17-20934 <br> Chapter 11 |

### MOTION TO BAR DEBTOR FROM FILING FOR 180 DAYS

Creditors CWT Canada II Limited Partnership ("CWT Canada") and Resource Recovery Corporation ("RRC") (the "CWT Parties") submit this *Motion to Bar Debtor From Filing for 180 Days* (the "Motion") and state as follows:

{Z0259787/1}                    1

## BACKGROUND

1. On January 4, 2016, Dennis M. Danzik (the "Debtor") filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code, Case No. 16-20002 (the "First Case").

2. On June 7, 2016, the United States Trustee ("UST") moved to convert the First Case to Chapter 7 for "cause" under § 1112(b). UST argued that Debtor could not establish that he filed in good faith; that Debtor could not effectuate a Chapter 11 plan; that there was continuing loss to the estate with no reasonable likelihood of rehabilitation; and, that Debtor grossly mismanaged the estate.

3. On July 6, 2016, Creditor Sigma Opportunity Fund II, LLC ("Sigma") filed a motion to dismiss ("Sigma's Motion to Dismiss"), in which it alleged that Debtor could not effectuate a valid Chapter 11 Plan, that estate assets were being diminished, and that Debtor was acting in bad faith.

4. On December 16, 2016, UST withdrew its motion to convert and indicated that he did not oppose dismissal.

5. On December 30, 2016, Creditor Richard S. Rofe ("Rofe") joined Sigma's Motion to Dismiss.

6. On January 6, 2017, the CWT Parties joined Sigma's Motion to Dismiss.

7. While the First Case was pending, the CWT Parties sought judgment against Debtor in New York State Court. *GEM Holdco LLC, et al., v. Changing World Technologies, L.P., et al.* (Sup. Ct. N.Y. Co.), Index No.: 650841/2013 (the "New York Action").

8. On June 3, 2016, as a part of the New York Action, the New York court held Debtor in criminal and civil contempt for his violation of court orders. Specifically, that court held that he (a) deliberately violated an attachment order directing him to return the stolen Tax Credits; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft. The New York Court held Debtor in contempt and issued a commitment order and arrest warrant for Debtor.

9. The New York Court found that Debtor is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."

10. On September 7, 2016, the CWT Parties obtained judgment in the amount of $7,033,491.13 against Debtor in the New York Action (the "New York Judgment").

11. On March 8, 2017, the Court found "cause" to dismiss the First Case under § 1112(b) based on the following factors: (1) Debtor was unable to effectuate a plan; (2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; (3) Debtor had failed to meet filing and reporting requirements; (4) Debtor had failed to pay taxes; and, (5) Debtor lacked good faith in filing and administering the case.

12. On December 6, 2017, Debtor filed a second Chapter 11 bankruptcy petition in this Court, starting the above-captioned bankruptcy case. [Doc. 1.]

13. On October 24, 2018, the CWT Parties filed their *Motion to Dismiss*. [Doc. 180.]

14. On November 13, 2018, Debtor filed *Debtor's Response to Motion to Dismiss of the CWT Parties*. [Doc. 184.]

15. On November 15, 2018, the CWT Parties filed their *Reply to Debtor's Response to Motion to Dismiss*. [Doc. 186.]

16. On November 20, 2018, the Court held an evidentiary hearing on the Motion to Dismiss.

17. On December 4, 2018, the Court entered a minute order on the Motion to Dismiss indicating that the Court took the matter under advisement. [Doc. 197.]

18. On February 4, 2019, in the New York Action, the Court entered a Decision & Order in which it stated that

> Danzik's belated attempts to blame others is all the more uncompelling when his actions are viewed in the context of his overall conduct during the litigation. . . . Danzik already had a history of violating court orders. For instance, the day after the court issued a TRO on May 5, 2015, Danzik formed a new corporate alter ego of RDX to evade the attachment order. Danzik also engaged in a variety of dilatory strategies, such as filing frivolous bankruptcy actions, constantly changing counsel and making baseless disqualification motions.

[Doc. 200-1 at 8 (citations omitted).]

19. On February 6, 2019, the Court entered its *Decision Memorandum on CWT's Motion to Dismiss* (the "Opinion"), [Doc. 201], and its *Judgment on CWT Parties' Motion to Dismiss* (the "Judgment"). [Doc. 202.] In the Judgment, the Court ordered that "Dennis Meyer Danzik's Chapter 11 bankruptcy case is dismissed." *Id.* at 1.

20. In the Opinion, the Court found cause to dismiss the case under § 1112(b)(1). The Opinion at 15. In particular, the Court found that the CWT Parties showed that "Debtor

1) is grossly mismanaging the estate by failing to timely file monthly operating reports, 2) is not able to effectuate a confirmable plan; and 3) filed this case in bad faith." *Id.* In finding that Debtor filed the case in bad faith, the Court found that "Debtor is using the breathing space to avoid his financial obligations. He has not argued nor demonstrated he is using it to rehabilitate any business." *Id.* at 10–11. Further, the Court quoted from its previous decision, in which it dismissed the First Case, and concluded that "Debtor's circumstances have not changed. The CWT litigation continues, and Creditors' claims are on hold while Debtor parks in bankruptcy." *Id.* at 12. In short, the Court concluded that Debtor had again filed in bad faith and misused bankruptcy protection to avoid his creditors and stall litigation.

21.   In addition, Debtor, as CEO for RDX Technologies, has filed two bankruptcy cases in Arizona, one in December 2015 and one in December 2017. *Id.* at 2 & n.3. As the Court noted, Debtor "is no stranger to the bankruptcy process." *Id.* at 2.

22.   The most recent of these Arizona cases was dismissed on November 28, 2018. A copy of the Order Dismissing Chapter 11 Case is attached as **Exhibit A**. The case was dismissed based a motion to convert or dismiss filed by the United States Trustee and joined by the CWT Parties and GEM Holdco, LLC. Exhibit A.

23.   As a part of the Order Dismissing Chapter 11 Case, the Bankruptcy Court for the District of Arizona further ordered that RDX Technologies "shall not be allowed to file any bankruptcy case in any jurisdiction for 180 days after entry of this Order." *Id.*

24.   The CWT Parties file this Motion asking the Court to bar Debtor from filing any bankruptcy case in any jurisdiction for 180 days from the entry of the Order.

## AUTHORITY AND ARGUMENT

25. Bankruptcy Code Section 349(a) provides:

**Unless the court, for cause**, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; **nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title**, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (emphasis added).

26. Section 109(g) provides:

[N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).

27. "In *In re Norton*, a bankruptcy court sitting in Utah made an exhaustive examination of the factors to be considered in applying § 349(a) and finding the requisite cause to make a dismissal order with prejudice." *Laine v. Gregory-Laine* (*In re Laine*), 383 B.R. 166, 176 (Bankr. D. Kan. 2008). In *Norton*, the Court noted that "very little case law exists in the Tenth Circuit defining and developing the § 349(a) dismissal with prejudice provision, or further defining what constitutes 'cause' for dismissal under § 349(a)." *Id.* at 674.

28. The Court began by noting the difference between § 109(g) and § 349(a). Section 109(g) was enacted "to stop the filing of meritless petitions in rapid succession to improperly obtain the benefit of the Bankruptcy Code's automatic stay provisions as a means of avoiding foreclosure." *Id.* at 680 (internal quotation marks omitted) (quoting *Colonial Auto Ctr. v. Tomlin* (*In re Tomlin*), 105 F.3d 933, 937 (4th Cir. 1997)). Section 349(a), on the other hand, was for circumstances "when a debtor's conduct is more egregious." *Id.*

29. Such egregious conduct showing "cause" to bar future filing under § 349(a) is determined by two factors "whether (1) the debtor demonstrated bad faith or defiance, and (2) whether the debtor's conduct was abusive or prejudicial to creditors." *Id.* at 681. Other Bankruptcy Courts in the 10th Circuit have used these factors in applying § 349(a). *See, e.g.*, *In re Guebert*, No. 07-41165, 2008 Bankr. LEXIS 1093, at *24 (Bankr. D. Kan. Apr. 11, 2008) ("As to the legal standards for dismissal with prejudice, in the Tenth Circuit two factors must coexist: (1) Bad faith or defiance; and (2) conduct which was abusive or prejudicial to creditors."). The *Norton* explained these factors as follows.

30. In assessing "whether the debtor demonstrated bad faith or defiance":

> Some courts have referred to this conduct as "contumacious" or a "pattern of evasion." This Court also chooses to label this conduct as defiant. The word "defiant" is defined as "bold resistance to an opposing force or authority." Although successive filings do not necessarily constitute defiant conduct, multiple filings may be evidence of such conduct, as is a debtor's continued failure to actively prosecute her bankruptcy cases.

*In re Norton*, 319 B.R. 671, 682–83 (Bankr. D. Utah 2005)

31. In assessing "whether the debtor's conduct was abusive or prejudicial to creditors":

> A creditor is prejudiced when a debtor, through repeated filings, denies the creditor the opportunity to exercise its contractual rights because of the automatic stay. Abusive serial filing not only denies the creditor certain rights, it allows a "rapacious" debtor to use the automatic stay as a sword against its creditor: this is not the purpose of § 362.

*Id.* at 683–84. This language and analysis has been quoted and followed by other Bankruptcy Courts in the 10th Circuit. *See, e.g.*, *In re Hancock*, No. 15-10037-JDL, 2015 Bankr. LEXIS 874, at *17–19 (Bankr. W.D. Okla. Mar. 19, 2015); *In re Guebert*, 2008 Bankr. LEXIS 1093, at *25–27.

32. Here, the background recounted above, shows that Debtor has engaged in defiant and dishonest conduct and misused bankruptcy protection to avoid creditors, stall adverse litigation, and delay the consequences of his actions. Debtors actions in and out of bankruptcy show a "pattern of evasion" and defiant conduct that is abusive or prejudicial to creditors. The Court should bar Debtor from filing for 180 days.

33. First, Debtor's egregious conduct demonstrates bad faith and defiance. In the New York Action, the Court held that Debtor (a) deliberately violated an attachment order directing him to return the stolen Tax Credits; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft. It also characterized Debtor as the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."

34. In this Court, (1) Debtor was unable to effectuate a plan; (2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; (3) Debtor had failed to meet filing and reporting requirements; (4) Debtor had failed to pay taxes; and, (5) Debtor lacked good faith in filing and administering the case. Nevertheless, even though there had been no change in circumstances, Debtor filed a second case. This Court ended up dismissing the second case for largely the same reasons as the first. Debtor's multiple filings are further evidence of his defiant conduct. *Id.* at 683. Finally, Debtor, like the Chapter 13 Debtor in *Norton*, "never made an effort to prosecute a plan in good faith, nor has there been any demonstrable change in her circumstances which might justify successive refiling." *Id.*

35. Nearly the entire background of this case, recounted above, falls under this first factor. Debtor's conduct exemplifies willful disregard of the legal system and misuse of the bankruptcy system. Debtor has shown no hesitation about repeatedly filing bankruptcy cases in this and another jurisdiction to avoid his creditors and without any intention of following through on those cases. The Court should follow the United States Bankruptcy Court for the District of Arizona and bar Debtor from filing any bankruptcy case in any jurisdiction for 180 days.

36. Second, Debtor's conduct was abusive or prejudicial to creditors. Debtor enjoyed bankruptcy protection for over a total of two years during his bankruptcy cases before this Court without prosecuting a plan of reorganization. In fact, Debtor has admitted to "wisely" using bankruptcy protection to stop collection actions against him. [Doc. 184 at 5 ("The Debtor has wisely used the protection of the automatic stay in this case as well

{Z0259787/1}    9

as the successor chapter 11 to get his income situation well grounded, free of disruptive compulsory process, to advance his--and others—defensive, legal claims . . . .").] And Debtor characterizes his failure to submit a Chapter 11 plan as "opt[ing], for now to forego the confirmation process." *Id.* at 4. The Court, in dismissing the second case, found that "Debtor is using the breathing space to avoid his financial obligations" and that "Creditors' claims are on hold while Debtor parks in bankruptcy." These statements, and the Courts' own findings about Debtor's conduct, shows that Debtor's bankruptcy filings have been solely for the purpose of avoiding his creditors without any intention of reorganizing. Thus, his conduct has been abusive or prejudicial to creditors. *In re Norton*, 319 B.R. at 684 ("The failure to file a plan and the timing of each filing demonstrates that this Debtor has not attempted to adjust and repay her debts as Chapter 13 contemplates. Rather, it demonstrates that she has abused the purposes of the automatic stay . . . her 'sole purpose has been to frustrate and delay her creditors.'"). The Court should again find that Debtor's purpose in filing these cases has been to frustrate creditors and avoid his obligations.

37. Because Debtor's conduct was egregious, demonstrates bad faith and defiance, and was abusive or prejudicial to creditors, the Court should bar Debtor from filing for 180 days. *See In re Sinischo*, 561 B.R. 176, 194 (Bankr. D. Colo. 2016) ("The Tenth Circuit, in *Frieouf v. United States* (*In re Frieouf*), 938 F.2d 1099, 1103-04 (10th Cir. 1991), held that under § 109(g), courts in this Circuit can bar a debtor from re-filing a petition for a maximum of 180 days."); *but see In re Norton*, 319 B.R. 671, 674 (Bankr. D. Utah 2005) ("[A] majority of courts have . . . affirmed lower courts' decisions that bar future access to the court beyond the § 109(g) 180-day limit.").

38. Like the debtor in *Norton*, "[t]his Debtor has systematically manipulated the bankruptcy system and used it as her own personal shield from creditors' collection efforts." *In re Norton*, 319 B.R. at 684. The Court should follow *Norton* and make clear that "such abusive conduct cannot be condoned and will not be tolerated." *Id.*

## CONCLUSION

**WHEREFORE**, the CWT Parties request that the Court enter an order barring Dennis Danzik from filing any bankruptcy case in any jurisdiction for 180 days.

Dated: Cheyenne, Wyoming
February 28, 2019

Respectfully submitted,

**CWT Canada II Limited Partnership and Resource Recovery Corporation,** *Creditors and Movants*

By: /s/ Bradley T. Hunsicker
Bradley T. Hunsicker, #7-4579
**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (307) 638-1975
E-Mail: bhunsicker@markuswilliams.com

*Attorneys for Creditors CWT Canada II Limited Partnership and Resource Recovery Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on February 28, *electronically,* via the Court's CM/ECF system upon the following parties who have entered their appearance in the above-captioned matter.

{Z0259787/1 }                                         11

**Ken McCartney**
The Law Offices of Ken McCartney, P.C.
P.O. Box 1364
Cheyenne, WY 82003
bnkrpcyrep@aol.com
*Attorney for Debtor*

                                          */s/ Bradley T. Hunsicker*
                                          Bradley T. Hunsicker